## In re Anonymous No. 11 D.B. 88

Disciplinary Board Docket no. 11 D.B. 88.

DOUGLAS, *Member,* May 2, 1989 — Pursuant to rule 208(d) of the Pennsylvania Rules of Disciplinary Enforcement, the Disciplinary Board of the Supreme Court of Pennsylvania submits its findings and recommendations to your honorable court with respect to the above-captioned petition for discipline.

### HISTORY OF PROCEEDINGS

On February 2, 1988, petitioner, Office of Disciplinary Counsel, filed a petition for discipline alleging that respondent deposited a $50,000 lawsuit-settlement check received on behalf of clients into respondent's personal attorney account. Petitioner also alleged that respondent failed to properly notify his clients of the receipt of the lawsuit-settlement funds, failed to promptly pay the proceeds to the client to whom the proceeds were due and used the

funds for his own benefit without the consent of his clients. Petitioner also claimed that respondent failed to provide his clients with an accounting of the funds and engaged in conduct which adversely reflects upon his fitness to practice law. The petition charged respondent with violating the following Disciplinary Rules of the Code of Professional Responsibility:

(1) D.R. 1-102(A)(4) — dealing with conduct involving dishonesty, fraud, deceit, or misrepresentation;

(2) D.R. 1-102(A)(6) — dealing with conduct adversely reflecting on an attorney's fitness to practice law;

(3) D.R. 9-102(A) — requiring, in applicable part, that all funds of clients paid to the lawyer or law firm be deposited in one or more identifiable bank accounts wherein no funds belonging to a lawyer or law firm shall be deposited;

(4) D.R. 9-102(B)(1) — dealing with an attorney promptly notifying the client of the receipt of funds;

(5) D.R. 9-102(B)(3) — dealing with the maintenance of complete records of funds of a client coming into the possession of the lawyer and the rendering of appropriate accounts to the client regarding them; and

(6) D.R. 9-102(B)(4) — dealing with the prompt payment or delivery to the client, as requested by the client, of funds in possession of the lawyer which the client is entitled to receive.

Respondent filed an answer to the petition for discipline and the parties entered into numerous stipulations in May 1988. The matter was referred to Hearing Committee [ ] consisting of [ ]. A hearing was held on July 28, 1988, and the hearing committee filed its report on January 5, 1989. Two members of the hearing committee recommended

public censure with probation by the Supreme Court under supervision provided by the board. The third member of the hearing committee recommended a six-month suspension together with probation. Both petitioner and counsel for respondent filed briefs on exceptions. Both parties also filed briefs opposing exceptions. The matter was subsequently adjudicated by the board at its March 9, 1989 meeting.

## FINDINGS OF FACT

The board substantially adopts the findings of fact of the hearing committee as follows:

(1) Petitioner is the Office of Disciplinary Counsel with a principal office at 300 North Second Street, Harrisburg, Pennsylvania, and it is invested, pursuant to rule 207 of the Pennsylvania Rules of Disciplinary Enforcement, with the power and duty to investigate all matters involving alleged misconduct of an attorney admitted to practice law in the Commonwealth of Pennsylvania and to prosecute all disciplinary proceedings brought in accordance with the various provisions of the aforesaid rules.

(2) Respondent, [ ] Esq., was born in 1939, admitted to practice law in the Commonwealth of Pennsylvania in 1971, and his office is located at [ ]. For a time, he was employed in a bank trust department.

(3) [A] was killed and his wife, [B], was severely injured in an automobile accident with [C] in [ ] County in July 1983.

(a) In or about November or December 1984, respondent was retained by [D], the executor named in the will of [A], to probate the will and to represent [B] and the estate in a suit against [E], administratrix of the estate of [C].

(b) Accordingly, respondent acted to have the will probated and letters testamentary were granted to [D] on December 3, 1984.

(4) At the time respondent was retained, he and the [B] orally agreed that his fee would be $60 per hour in regard to the services he would render in the civil suit.

(5) Thereafter, negotiations were conducted between respondent and a representative of [F] Insurance Company, the insurer of [C].

(6) On February 27, 1985, respondent filed suit captioned *[B] et al. v. [E], Administratrix* in [  ] County.

(7) On February 28, 1985, [D] paid respondent for services rendered to date and costs advanced per the agreement between respondent and [D] concerning the case.

(8) In July 1986, suit settlement was achieved and [F] issued a $50,000 check dated July 21, 1986. Of that sum, $12,000 was due respondent as a fee, with the remaining $38,000 due the [Bs] as suit proceeds.

(a) The [F] check was sent directly to respondent and made payable to him, as attorney for [B] and the estate.

(b) Respondent endorsed the check in his name on July 28, 1986.

(c) Respondent deposited the $50,000 check into a business account titled "[Respondent], Attorney at Law" at [G] Bank, numbered [  ].

(d) Said account was not one containing only clients' funds, as described in Disciplinary Rule 9-102(A).

(9) In August 1986, [B] began receiving directly $1,000 annuity payments which were also due her under the settlement agreement.

(10) In or about August 1986, [D] telephoned

respondent concerning the $38,000 due the [Bs] and, during that conversation and all subsequent conversations between [D] and respondent, respondent was candid and truthful regarding his dealings as to the $38,000 sum due the [Bs] and his subsequent dealings with that fund.

(11) October 8, 1986 marked the commencement of a number of communications between [H], the brother of [D], which communications by [H] were made on behalf of his mother, [B], one of the clients of respondent; and on that date the telephone conversation between [H] and the respondent concerned the $38,000 due the [Bs]. At that time, respondent informed him that:

(a) He had just received the $50,000 check "a couple of days ago";

(b) He had deposited the check into an escrow account;

(c) Thereafter, the Internal Revenue Service had nevertheless frozen that escrow account due to back taxes that respondent owed; and

(d) He expected to have the money available by the end of the month.

(12) On or about November 5, 1986, [H] telephoned respondent concerning the funds. At that time, respondent informed him that:

(a) The funds still had not been released by the IRS;

(b) He was borrowing money to pay the back taxes so that the IRS would release the escrowed funds; and

(c) "She," [B], would have the money by Thanksgiving.

(13) At about Thanksgiving, [H] again telephoned respondent about the funds, at which time respondent indicated that:

(a) He had not yet secured the bank loan (through

which he was attempting to borrow funds for the purpose of paying the [Bs]); and

(b) He would let the IRS have the funds, and then would sue the IRS to recover the funds; and

(c) He would pay the [B] $15,000 the following week and the remainder soon thereafter.

(15) In about late January 1987, respondent telephoned [B] and told her that he would immediately give to her $5,000 but that it would take him two or three months to pay her the balance of the funds.

(16) On or about February 9, 1987, respondent delivered to [B] a check in the amount of $5,000 drawn on an account held by him.

(17) On April 7, 1987, respondent paid to the [Bs] the remaining $33,000.

(18) On May 12, 1987, respondent paid the [Bs] an additional $1,566.38 as interest for the time that he had retained the funds.

(19) The statements for respondent's checking account show that, as early as August 7, 1986, the balance fell below $38,000.

(a) Thereafter, the balance continued to fall and on October 7, 1986, the balance was $13,242.47.

(b) On October 7, 1986, the Internal Revenue Service garnished all funds in that account.

(20) Between the deposit on July 28 and the garnishment on October 7, 1986, respondent's checking account balance had been reduced due to numerous personal and business obligations made by respondent.

(21) As a result of the commencement of this proceeding, respondent has recognized his past inability to properly attend to the needs of his clients and the business aspect of his law practice as it was conducted.

(22) During the time period relevant to this case,

respondent shared office space with Attorney [I] who was in ill health, and respondent spent considerable time attending to Attorney [I's] clients and affairs for which he was not compensated.

(23) The relationship between respondent and [D] was good and continues to be so and respondent's fee arrangement substantially increased the net proceeds from the law suit which his clients, the [Bs], were to and did ultimately receive.

(24) When respondent deposited the [Bs] funds into his personal business account, it was not done with a dishonest motive.

(25) Respondent's misuse of the [Bs] funds was not motivated by an evil or fraudulent intent.

(26) During the period of time from respondent's receipt of the [Bs] funds until they were ultimately paid to the [Bs], it was respondent's intent to pay the funds due the [Bs] in full.

(27) The harm occasioned to respondent's client, [B], consisted in the delay of her receipt of lawsuit-settlement funds due her.

(28) Shortly after the institution of the instant complaint, another disciplinary complaint was filed against the respondent for conduct which had occurred a number of years before and respondent received an informal admonition for same on January 14, 1988, the conduct complained of being a failure to give a written accounting to a client regarding the disbursement of certain funds.

(29) Respondent has been truthful and candid concerning his conduct in this matter and demonstrates appropriate remorse regarding it.

(30) Respondent has cooperated with petitioner in the investigation of this matter.

(31) The bookkeeping practices of respondent have improved as a result of this proceeding.

(32) Respondent enjoys a good reputation for

honesty in his community and has devoted a considerable amount of time to doing pro bono community work.

(33) Respondent provides the sole meaningful support for his wife and three children and also contributes to the support of his mother.

(34) Respondent and his family live a very modest lifestyle.

## DISCUSSION

The board agrees with the findings of the hearing committee concerning the disciplinary rules violated by respondent. However, the board does not accept the hearing committee's recommendation of public censure with probation. A majority of the board recommends to your honorable court that respondent be suspended from the practice of law for a three-month period. Three members of the board dissent and would recommend a one-year suspension.

Respondent conceded that he violated Disciplinary Rule 9-102(A) by depositing the $50,000 settlement check into a business account where funds of his own were kept. Therefore, no further discussion on respondent's violations of this rule is necessary.

The board also finds that respondent violated Disciplinary Rule 9-102(B)(1) by his failure to promptly notify [B] of the receipt of her $50,000 settlement funds on July 28, 1986. It was not until [B's] son, [H], on his mother's behalf, called respondent that respondent mentioned the receipt of the funds. Respondent did, however, promptly notify his other client, [D], of the receipt of the funds. Therefore, respondent did not violate Rule 9-102(B)(1) with respect to [D], [B's] other son.

With respect to Disciplinary Rule 9-102(B)(3) —

dealing with the maintenance of complete records of funds of a client coming into the possession of the lawyer and the rendering of appropriate accounts to the client regarding them, the board feels that respondent violated only the second portion of that rule. Respondent failed to render *appropriate* accounts to his client regarding funds he received on behalf of [B]. An accounting of such funds was not made until May 1987, almost one year after he had received the funds. Yet respondent did maintain a complete record of the [Bs'] funds since respondent's records were complete enough to show the deposit of these funds into respondent's business checking account. It should be noted that respondent did not identify disbursements from the [B] account as a separate client card might. Nonetheless, respondent's records of the [B] funds "coming into his possession" were sufficiently complete.

The record clearly demonstrates that respondent violated Disciplinary Rule 9-102(B)(4) which requires the prompt payment or delivery of client funds upon the client's request. [H] contacted respondent several times and requested respondent pay the funds due to [B]. Although respondent had received these funds in July 1986, he failed to pay any part of these funds to [B] until February 9 and April 7, 1987.

The record does not establish that respondent's conduct involved dishonesty, fraud or deceit. The board believes that respondent's misuse of the [B] funds constituted carelessness and negligence, but failed to amount to dishonesty, fraud and deceit. On the other hand, respondent did make misrepresentations to [H] on several occasions regarding the funds. Thus, the board finds that respondent violated that part of Disciplinary Rule 1-102(A)(4) dealing with conduct involving misrepresentation.

Finally, the board feels that the evidence is not sufficient to support a finding that respondent's conduct adversely reflects upon his fitness to practice law. No evidence was adduced in the matter, apart from the specific rule violations to which that evidence applied, which demonstrates any "other conduct" that adversely reflects upon respondent's fitness to practice law. Furthermore, two members of the [ ] County Bar, [J], Esq., and [K], Esq., testified before the hearing committee as to respondent's ability as a lawyer and his efforts on behalf of Community Services and the Catholic Church. They further testified that they desired to have respondent join them in their law practice. Although respondent's conduct certainly amounts to a careless and negligent misuse of client funds, the record contains insufficient evidence to find that such conduct adversely reflects on his ability to practice law. Accordingly, the board finds that respondent did not violate Disciplinary Rule 1-102(A)(6).

## CONCLUSIONS OF LAW

The Disciplinary Board adopts the following conclusions of law with respect to the charges against respondent:

(a) Respondent violated Disciplinary Rule 1-102(A)(4) in that he made misrepresentations during communications with [H] who was acting on behalf of his mother, [B], concerning the settlement funds respondent had received in settlement of the [Bs'] law suit.

(b) Respondent did not violate Disciplinary Rule 1-102(A)(6) for the reason that there was no "other evidence" adduced by petitioner separate and apart from evidence petitioner adduced as to other disciplinary rule violations that adversely reflected upon respondent's fitness to practice law.

(c) Respondent violated Disciplinary Rule 9-102(A) relating to the depositing of clients' funds in an identifiable bank account wherein no funds belonging to the lawyer were deposited by his own admission.

(d) Respondent violated Disciplinary Rule 9-102(B)(1) inasmuch as he did not promptly notify one of his clients, [B], of the receipt of lawsuit-settlement funds.

(e) Respondent violated Disciplinary Rule 9-102(B)(3) in that he failed to render appropriate accounts to his client, [B], regarding funds of hers that came into the possession of respondent.

(f) Respondent violated Disciplinary Rule 9-102(B)(4) for although he was requested to make payment of [B's] funds to her by [H] speaking on her behalf, which funds were in respondent's possession, he failed to make prompt payment of the same to her and she was entitled to receive the same.

## RECOMMENDATION

The Disciplinary Board recommends as follows:

(1) That respondent, [   ], be suspended from the practice of law for a period of three months.

(2) That respondent, [  ], be directed by the court to pay all the necessary expenses and costs incurred in these proceedings.

Board members Mundy, Gilbert and Padova dissent and would recommend a one-year suspension. Mr. Keller did not participate in the adjudication.

## ORDER

And now, October 11, 1989, upon consideration of the report and recommendations of the Disciplinary Board dated May 2, 1989, it is hereby ordered that [respondent] be and he is suspended from the

bar of this commonwealth for a period of three months, and he shall comply with all the provisions of rule 217, Pa.R.D.E. It is further ordered that respondent shall pay costs to the Disciplinary Board pursuant to rule 208(g), Pa.R.D.E.

Mr. Justice Larsen and Mr. Justice Papadakos dissent and would issue a rule to show cause why respondent should not be disbarred.